## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### Civil Action No. 3:09-CV-00220-GCM

| | | |
|---|---|---|
| JEREMY ALLEN MAYFIELD and MAYFIELD MOTORSPORTS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **PLAINTIFFS' SURREPLY OPPOSING** |
| NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC.; BRIAN ZACHARY FRANCE; AEGIS SCIENCES CORPORATION; DAVID LEE BLACK, Ph.D; and DOUGLAS F. AUKERMAN, M.D., | ) ) ) ) ) ) ) ) | **DEFENDANTS' MOTION FOR RELIEF PURSUANT TO RULE 60(b)(5)** |
| Defendants. | ) | |

## I. PRELIMINARY STATEMENT

Jeremy Allen Mayfield ("Mayfield") and Mayfield Motorsports, Inc. ("MMI") (jointly "Plaintiffs"), respectfully submit this surreply addressing three matters that Defendants newly raised in the Reply in Further Support of Defendants' Motion Pursuant to Rule 60(b)(5) and related papers (collectively "Rule 60(b) Reply"). [Docs. 46 – 46-9]. As explained below, Defendants' newfound factual and legal theories are meritless.

## II. PERTINENT BACKGROUND

This Court issued a preliminary injunction on July 1, 2009, lifting a suspension that the National Association for Stock Car Auto Racing, Inc. ("NASCAR"), imposed against Mayfield concerning a drug test he underwent on May 1, 2009. [Doc. 30 at 65:17-22; Doc. 36]. Defendants appealed on July 6, 2009, and asked both this Court and the Fourth Circuit to stay the preliminary injunction during the pendency of such appeal. [Docs. 31 – 33, 44]. The Fourth Circuit obliged on July 24, 2009. [Doc. 44].

Meanwhile, Defendants filed their Motion for Relief Pursuant to Rule 60(b)(5) and related papers (collectively "Rule 60(b) Motion") with this Court, [Docs. 38 – 39-11], arguing that the following items evince a significant factual change necessitating Rule 60(b)(5) vacatur of the preliminary injunction that is *the* subject of their pending appeal to the Fourth Circuit:

> (a)     An affidavit that Mayfield's former stepmother executed on July 15, 2009, accusing Mayfield of not only "snorting" methamphetamine at least thirty times between 1998 and 2005, but also of "cook[ing] some of his own methamphetamine until the stores took pseudoephedrine off the shelves," [Doc. 39-10 at 1-2(¶¶ 4-5)] (bracketed alteration added), and

> (b)     The result derived from testing a urine specimen Defendants extracted from Mayfield on July 6, 2009 ("Defendants' Test"), showing normalized amphetamine and methamphetamine levels of 12,800 ng/mL and 67,300 ng/mL, respectively, [Doc. 39-11 at 12].

Plaintiffs submitted their responsive papers (collectively "Rule 60(b) Response") on July 21, 2009.  [Docs. 43 – 43-4].  They asserted that Rule 60(b) does not apply to interlocutory rulings such as a preliminary injunction, Defendants' silence regarding that reality notwithstanding. [Doc. 43 at 4-5].  Plaintiffs likewise asserted that Defendants' pending appeal divests this Court of jurisdiction to grant the very vacatur they seek.  [Id. at 5] (citing Lewis v. Tobacco Workers' Int'l Union, 577 F.2d 1135 (4th Cir. 1978) cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979), among other authorities).  Moreover, Plaintiffs asserted that even if the Rule 60(b) Motion were not procedurally and jurisdictionally defective, it would still fail because the seemingly lethal-dose positive methamphetamine result derived from the Defendants' Test contradicts the negative methamphetamine result yielded from a drug test Mayfield independently underwent less than one hour after the Defendants' Test. [Doc. 43 at 6-7; Doc. 43-2 at 1-13; Doc. 43-3 at 1-4].

Defendants filed their Rule 60(b) Reply on July 27, 2009, wherein they raised three new matters concerning which Plaintiffs sought leave to file a surreply. [Doc. 48 at 2-4; Doc. 49 at 4-

6] (describing such new matters). This Court granted the requested leave on August 11, 2009, and Plaintiffs submit this surreply accordingly.

## III. ARGUMENT

### A. Rule 60(b) Does Not Apply To This Court's Preliminary Injunction Ruling

Defendants assumed at the outset that Rule 60(b)(5) applies here, even though the ruling they seek to vacate is an interlocutory preliminary injunction order. [Doc. 38 at 1; Doc. 39 at 1, 5-7]. Then, after Plaintiffs highlighted the plain error of such an assumption, [Doc. 43 at 4-5], Defendants cited three decisions in an attempt to resuscitate their wayward position. [Doc. 46 at 4] (citing Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 60 F.3d 823, 1995 WL 406612 (4th Cir. 1995) (Unpublished Opinion), Centennial Broad., LLC v. Burns, 433 F.Supp.2d 730 (W.D. Va. 2006), and Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo, 551 F.3d 10 (1st Cir. 2008)). Defendants' position remains inanimate despite their resuscitative efforts.

First, Defendants cannot rely on *dicta* the Fourth Circuit used in Multi-Channel to say that Rule 60(b)(5) applies here. See 1995 WL 406612 at *1-*4 (suggesting that subsections (1) and (2) of Rule 60(b) applied regarding whether a magistrate should have modified a preliminary injunction). This is so not only because Multi-Channel lacks precedential value, see, e.g., F.R. App. P. 32.1(a)(ii) (2009) (allowing courts to restrict citing unpublished decisions issued before January 1, 2007); Fourth Cir. L.R. 32.1 (2009) (disfavoring citing unpublished Fourth Circuit decisions issued before January 1, 2007), but also because it contradicts clear Fourth Circuit precedent to the contrary. See, e.g., American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-515 (4th Cir. 2003) (finding that Rule 60(b) does not apply to interlocutory rulings); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469, 1472 (4th Cir. 1991)

(same); see also Riddle v. Auto-Owners Ins. Co., No. 2:08-CV-1-F, 2009 WL 2151386 at *1 (E.D.N.C. July 17, 2009) (Fox, S.J.) (following American Canoe and Fayetteville Investors); American Angus Ass'n v. Sysco Corp., 829 F.Supp. 807, 821 (W.D.N.C. 1992) (Voorhees, J.) (noting that Rule 60(b) cannot be used to vacate a preliminary injunction, which is an interlocutory ruling).

Defendants likewise wrongly suggest that the Virginia district court's decision in Burns supports the notion that Rule 60(b)(5) applies here. [Doc. 46 at 4]. Indeed, Burns expressly recognized that while Rule 60(b)-like equitable principles may guide a court in analyzing a motion to vacate a preliminary injunction, Rule 60(b) itself does not apply. See 433 F.Supp.2d at 733; accord, e.g., Superior Bank, F.S.B. v. Tandem Nat'l Mortgage., Inc., 197 F.Supp.2d 298, 331-332 (D. Md. 2000) (same).

Finally, Defendants cannot solicit aide from Perez-Perdomo to boldly proclaim that "there is no doubt that preliminary injunctions fall within the scope of Rule 60(b)." [Doc. 46 at 4]. This is so because while the First Circuit seemingly condones applying Rule 60(b)(5) to preliminary injunctions, see Perez-Perdomo, 551 F.3d at 16, its position appears to be anomalous in this regard. See, e.g., Southern New England Tel. Co. v. Global Naps, Inc., 620 F.Supp.2d 152, 154 (D. Mass. 2009) (citing Perez-Perdomo in intimating that unlike other circuits, the First Circuit permits modification of preliminary injunctions under Rule 60(b)(5)); see generally Charles A. Wright & Arthur R. Miller, 11 Federal Practice and Procedure, § 2852 n. 7 (Electronic Update 2009) (stating the following in discussing the scope of Rule 60(b): "A preliminary injunction is not a final judgment, order, or proceeding that may be addressed by a motion for relief from judgment."). Accordingly, this Court should determine that Rule 60(b) is inapplicable here.

## B. Fobian And Related Decisions Are Inapposite Here

Defendants now contend that the Fourth Circuit's decision in <u>Fobian v. Storage Tech.</u> <u>Corp.</u>, 164 F.3d 887 (4th Cir. 1999), authorizes this Court to vacate the preliminary injunction notwithstanding Defendants' pending appeal. [Doc. 46 at 5]. Again, Defendants contention is misplaced. <u>Fobian</u> merely prescribes a limited remand process, applicable when a Rule 60 motion is filed as to a *final* judgment that is also the subject of an ongoing appeal.

Upon a cursory reading, the language of <u>Fobian</u> may at first appear to support Defendants' argument. The Fourth Circuit stated:

> [W]hen a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion, and should do so promptly. If the district court determines that the motion is meritless, as experience demonstrates is often the case, the court should deny the motion forthwith; any appeal from the denial can be consolidated with the appeal from the underlying order. If the district court is inclined to grant the motion, it should issue a short memorandum so stating. The movant can then request a limited remand from this court for that purpose. By saving judicial resources and avoiding expense and delay, this procedure accords with the overarching mandate in the Federal Rules of Civil Procedure that the rules "shall be constructed to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; <u>see</u> <u>Ferrell v. Trailmobile, Inc.</u>, 223 F.2d 697, 699 (5th Cir. 1955).

<u>Id.</u> at 891.

However, a full reading of <u>Fobian</u> and its progeny reveals the fallacy of Defendants' position. Defendants fail to note that the <u>Fobian</u> plaintiffs sought Rule 60 relief from adverse – and obviously, final – summary judgment orders in an age discrimination case, while simultaneously appealing the district court's rulings. <u>Id.</u> at 889. Likewise, subsequent opinions in this jurisdiction and elsewhere consistently limit application of <u>Fobian</u> and its analogues to cases involving *final* judgments and orders. <u>See</u> <u>South Carolina Dept. of Disabilities and Special</u> <u>Needs v. Hoover Universal, Inc.</u>, 535 F.3d 300 (4th Cir. 2008) (applying <u>Fobian</u> procedure in challenge of summary judgment ruling); <u>Mahone v. Ray</u>, 326 F.3d 1176 (11th Cir. 2003)

(involving appeal from final order of dismissal); <u>Union Insurance Co. v. Soleil Group, Inc.</u>, 585 F.Supp.2d 783 (D.S.C. 2008) (considering appeal from final order of dismissal); <u>Lans v. Gateway 2000, Inc.</u>, 110 F.Supp.2d 1 (2000) (considering motion for relief from summary judgment order pending appeal under <u>Fobian</u> analogue). <u>See also</u> <u>Adams v. City of Chicago</u>, 135 F.3d 1150, 1153-1154 (7th Cir. 1998) (confining the Seventh Circuit's <u>Fobian</u> analogue to "final" rulings, not interlocutory rulings such as the preliminary injunction at issue in <u>Adams</u>).

The rationale for a limited application of the <u>Fobian</u> remand rule is manifest. Applying such a procedure in a Rule 60(b) attack on a preliminary injunction flies in the face of both statutory authority and longstanding judicial precedent. Appeals from certain interlocutory orders, including injunctions, are authorized by 28 U.S.C. § 1292(a). However, in <u>Lewis v. Tobacco Workers' Int'l Union</u>, 577 F.2d 1135, 1139 (4th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979), the Fourth Circuit specifically held that an appeal pursuant to this provision divests the trial court of jurisdiction to vacate its underlying order. "[T]his is an appeal from the granting of an injunction under s <u>1292(a)</u>, and the district court <u>lost its power to vacate the order when the notices of appeal were filed</u>." <u>Id.</u> at 1139 (emphasis added).

Although Defendants explicitly recognize that the statutory authority for their current appeal is the very provision at issue in <u>Lewis</u>, <u>see</u> Defendants' Appellate Docketing Statement [Doc. 48, Ex. 1 at 1] (repeatedly citing 28 U.S.C. § 1292(a)(1)), they apparently contend that <u>Lewis</u> is no longer controlling authority as to interlocutory orders in the wake of <u>Fobian</u>. [Doc. 46 at 5 n.6]. Defendants' desperate attempt to distinguish <u>Lewis</u> on these grounds falls flat. The <u>Fobian</u> decision involved an appeal from a final judgment (as opposed to an interlocutory ruling) and made no reference to <u>Lewis</u> whatsoever. Moreover, it is well recognized that one Fourth Circuit panel cannot explicitly or implicitly overrule another panel. <u>Scotts Co. v. United Indus.</u>

Corp., 315 F.3d 264, 272 n.2 (4th Cir. 2002). Finally, the Fourth Circuit itself continues to cite Lewis in cases decided after Fobian, further demonstrating the continued vitality and efficacy of its earlier opinion. See New Horizon of NY, LLC v. Jacobs, 231 F.3d 143, 153 n.20 (4th Cir. 2000) (citing Lewis). Defendants therefore lack any basis to assert that Lewis is no longer binding authority, and their motion under Rule 60(b)(5) should be denied for this additional reason.

## C. Defendants Have Contradicted The Foundational Theory Of Their Rule 60(b) Motion

Lastly, the Rule 60(b) Reply advances Defendants' new theory that the concentrations of methamphetamine delineated in Mayfield's two NASCAR urine tests (a) should not be "normalized" because the "'normalization' protocol has been published just this year;" (b) are relatively low; and (c) do not suggest whether Mayfield has chronically abused methamphetamine or otherwise possesses a high tolerance for such admittedly destructive drug. [Doc. 46 at 3, 8-9; Doc. 46-5 at 2-7].

In support of their Rule 60(b) Motion, Defendants initially argued that the results of their July 6, 2009 urine test, showing normalized amphetamine and methamphetamine levels of 12,800 ng/mL and 67,300 ng/mL, respectively, [Doc. 39-11 at 12], were consistent with "the levels of a habitual drug user." [Doc. 39 at 6]. In his supporting affidavit, Defendant Black stated that such results were "indicative of a heavy and chronic user who most likely has developed tolerance to methamphetamine effects." [Doc. 39-11, ¶ 14]. In their Rule 60(b) Response, Plaintiffs offered the Second Affidavit of Harold E. Schueler, Ph.D, who also testified that that such "astronomical" test results could only be accurate if Mr. Mayfield was "deceased or a chronic abuser." [Doc. 43-3 at ¶ 7]. However, Dr. Schueler also noted that Mayfield

exhibited <u>none</u> of the adverse physical or emotional symptoms indicative of chronic methamphetamine abuse. [<u>Id.</u> at ¶ 8-9].

Defendants now offer the belated affidavit of Dr. Mace Beckson to counter Dr. Schueler's testimony. [Doc. 46-5]. In addition to criticizing the use of normalized test results as scientifically unreliable, [Doc. 46-5 at ¶ 11], Dr. Beckson incredibly opines that there is no correlation between the concentration of a drug in a donor's urine and any behavioral or physical manifestations the donor might exhibit. [<u>Id.</u> at 2-7]. Dr. Beckson paradoxically agrees with Dr. Schueler regarding the recognized symptoms of long-term dependence (i.e., severe weight loss, tooth decay, skin irritation, etc.). [<u>Id.</u> at ¶ 13]. Nevertheless, citing a list of non-specific factors that may impact the clinical effect of any given drug, such as tolerance levels, metabolism, and the individual's mind-set, Dr. Beckson baldly asserts that Dr. Schueler cannot validly question Defendants' test results based on an "apparent lack of certain physical signs of long-term, severe methamphetamine addiction." <u>Id.</u> at ¶ 18.[1]

Such testimony marks a dramatic sea change in Defendants' position. Defendants previously pointed to their most recent urine test as evidence that Mayfield is a chronic methamphetamine user who poses a danger to race fans and participants. They now assert that no hard and fast conclusions about Mayfield's alleged drug use can be drawn from the very same test results. This tortured shift in strategy ironically contradicts the prior testimony of Dr. Black. In reality, Dr. Beckson's affidavit is nothing more than a naked attempt to undercut Dr. Schueler's testimony, which is otherwise amply supported in the record. Federal courts routinely criticize parties who attempt to offer such contradictory evidence to gain a tactical advantage.

---

[1] It should be noted that while Dr. Beckson roundly criticizes Dr. Schueler's conclusions, he makes no reference to the statements of Dr. Black concerning Mayfield's allegedly habitual drug use. [Doc. 46-5 at 2-7].

See, e.g., <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 960 (4th Cir. 1984) (rejecting contradictory affidavit in summary judgment context).  Similarly, this Court should not reward Defendants' use of shifting testimony in pursuit of relief under Rule 60(b)(5).

## III. CONCLUSION

As argued herein and elsewhere, [Doc. 43], Plaintiffs ask this Court to deny the Rule 60(b) Motion in its entirety.

Respectfully submitted this 18th day of August, 2009.

**JAMES, McELROY & DIEHL, P.A.**

_____/s/ John R. Buric_____
William K. Diehl, Jr., NC Bar No. 1187
John R. Buric, NC Bar No. 22688
Richard S. Wright, NC Bar No. 24622
Preston O. Odom, III, NC Bar No. 29587
600 South College Street
Charlotte, North Carolina 28202
704-372-9870 (telephone)
704-333-5508 (facsimile)
BDiehl@jmdlaw.com; JBuric@jmdlaw.com
RWright@jmdlaw.com; POdom@jmdlaw.com
***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that this **PLAINTIFFS' SURREPLY OPPOSING DEFENDANTS'**

**MOTION FOR RELIEF PURSUANT TO RULE 60(b)(5)** has this date been served upon

Defendants' respective counsel of record as follows via this Court's CM/ECF system:

   T. Paul Hendrick – PHendrick@hendricklawfirm.com
   Matthew Bryant – MBryant@hendricklawfirm.com
   Timothy Nerhood – TNerhood@hendricklawfirm.com
   Helen M. Maher – hmaher@bsfllp.com
   Olav A. Haazen – ohaazen@bsfllp.com
   Michael Mohan Merley – mmerley@bsfllp.com

This the 18th day of August, 2009.


### JAMES, McELROY & DIEHL, P.A.


   _____/s/ John R. Buric_____
   William K. Diehl, Jr., NC Bar No. 1187
   John R. Buric, NC Bar No. 22688
   Richard S. Wright, NC Bar No. 24622
   Preston O. Odom, III, NC Bar No. 29587
   600 South College Street
   Charlotte, North Carolina 28202
   704-372-9870 (telephone)
   704-333-5508 (facsimile)
   BDiehl@jmdlaw.com; JBuric@jmdlaw.com
   RWright@jmdlaw.com; POdom@jmdlaw.com
   *Counsel for Plaintiffs*